J-S22039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BENJAMIN VILLANUEVA III | : | |
| | : | |
| Appellant | : | No. 173 MDA 2020 |

Appeal from the PCRA Order Entered January 15, 2020
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001712-2012

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED: JUNE 22, 2020**

Appellant, Benjamin Villanueva III, appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

Shortly after 5:00 a.m. on October 11, 2009, two masked individuals entered a Sunoco A-Plus store in South Williamsport, assaulted the clerk, and stole approximately $150 in cash and numerous packs of cigarettes.  The two individuals left the store on foot, and were later traced by a police dog as having traveled to a nearby alley whereupon the dog lost the scent.

The police obtained a description of the two individuals from the clerk and by viewing surveillance video from the store.  The first individual was an

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

approximately 5'8" tall white male, wearing a light skin-colored Halloween mask, a gray hoodie sweatshirt, and gloves. The other was a significantly taller male wearing a green coat, dark gloves, and a dark-colored ski mask. The video revealed that the ski mask had oddly cut eye holes, and it appeared that there was some other light-colored material underneath the ski mask, rather than merely exposed skin. The taller individual was carrying a bright blue tote bag with white letters or symbols on the side of it.

Two days later, the South Williamsport police were dispatched to the 700 block of Matthews Boulevard to investigate reports of several suspicious persons lingering near a bank in the early morning hours. The police stopped a gold sedan that was mentioned in the reports and found one occupant inside, Stephen Moore. The police ran the license plate and discovered that the plate was associated with another car owned by the mother of Philip Hall. Hall was an acquaintance of Stephen Moore and Appellant. Other officers who were searching the area located Appellant several blocks away. Upon questioning, Appellant asked whether "Stephen got locked up" and stated that he had been with Moore. N.T., 10/21/14, at 98.

Officers searching in the vicinity of the gold car discovered a light skin-colored Halloween mask with no hair, gloves, and a white Halloween mask with reddish synthetic hair. It was apparent that these items had been recently deposited on the ground because the items were dry even though the ground was covered with dew. Wrapped inside the white mask was a loaded .22 caliber handgun. The mask with no hair matched the one worn by

the shorter of the two individuals who robbed the Sunoco. The gold car was impounded, and a search warrant was obtained. Inside the vehicle, police discovered a black ski mask, a blue insulated tote bag with white lettering, and a green coat. The ski mask and coat were consistent with items worn by the taller of the two individuals who perpetrated the Sunoco robbery, and the blue bag matched the one carried by that individual. A reddish strand of hair was discovered inside the ski mask, which was later determined by forensic analysis to match the hair from the white Halloween mask found near the gold vehicle.

DNA testing was performed on several of the items recovered in the vicinity of the gold vehicle. Genetic material from several individuals was found on the white mask; however, it was determined with a high degree of certainty that Appellant's DNA matched the DNA of the main contributor to that mixture. DNA found on the light flesh-toned mask matched Philip Hall.

Appellant was arrested and charged with robbery, theft by unlawful taking or disposition, receiving stolen property, simple assault, criminal conspiracy to commit each of these offenses, and recklessly endangering another person.[2] Following a non-jury trial, the trial court found Appellant guilty of all charges. Philip Hall was charged as Appellant's co-defendant in the Sunoco robbery, and he pleaded guilty to offenses related to the incident in 2015.

_____

[2] 18 Pa.C.S. §§ 3701(a)(1)(ii), (iv), 3921(a), 3925(a), 2701(a)(3), 903(c), and 2705, respectively.

On December 23, 2014, the trial court sentenced Appellant to an aggregate term of 5 to 12 years of incarceration. Appellant filed a timely motion for reconsideration of the sentence, which the trial court denied. Appellant appealed, and on April 4, 2016, this Court affirmed the judgment of sentence. *Commonwealth v. Villanueva*, No. 246 MDA 2015 (Pa. Super. filed April 4, 2016) (unpublished memorandum). Appellant filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on July 27, 2016. *Commonwealth v. Villanueva*, 145 A.3d 165 (Pa. 2016) (table).

On March 1, 2019, Appellant filed, *pro se*, his first PCRA petition in which he claimed to have discovered new evidence that demonstrated his innocence with respect to the Sunoco robbery. Specifically, Appellant attached to the petition a letter written by Thomas Moore in February 2019 in which Moore stated that he committed the October 11, 2009 robbery with Philip Hall, who pleaded guilty to the robbery in 2015. PCRA Petition, 3/1/19, Exhibit B. Following the appointment of counsel, Appellant filed an amended PCRA petition on April 4, 2019.

A PCRA hearing was conducted on July 22, 2019, at which Thomas Moore and Philip Hall testified on behalf of Appellant. Moore – who is not related to Stephen Moore, the individual with whom Appellant was found with two days after the robbery – testified consistently with his letter that he was the individual who perpetrated the Sunoco robbery with Hall. N.T., 7/22/19, at 2-38. Hall likewise recounted the events of the Sunoco robbery with Moore as his partner in that crime; he further stated during his testimony that he

- 4 -

had told the court during his 2015 guilty plea colloquy that Appellant was not the individual who participated in the robbery with him but he did not name who that individual was. *Id.* at 40-63. The Commonwealth called Sergeant James Taylor to testify regarding the evidence collected and presented at trial implicating Appellant as perpetrating the October 11, 2009 robbery. *Id.* at 65-77.

On January 15, 2020, the PCRA court, the Honorable Marc F. Lovecchio presiding, filed an order and accompanying opinion denying the PCRA petition. In its opinion, the PCRA court first determined that Appellant's PCRA petition was untimely because it was not filed within one year of the date his judgment became final. PCRA Court Opinion, 1/15/20, at 10-11. Nevertheless, the PCRA court concluded that Appellant satisfied the newly discovered fact exception to the PCRA's one-year time bar because he was unaware of the facts upon which the petition was based until Appellant's receipt of Thomas Moore's February 15, 2019 letter. *Id.* at 11-12. The court found that Appellant satisfied the PCRA exception because he filed his PCRA petition within one month of Moore's letter and he could not have previously discovered Moore's admission with the exercise of due diligence. *Id.* at 12.

The PCRA court concluded, however, that Appellant was not entitled to PCRA relief on his after-discovered evidence claim, finding that the evidence was not of such a strong nature or character that it would likely result in a different verdict upon retrial. *Id.* at 13. The PCRA court found that Moore's testimony lacked credibility because it was internally inconsistent and

contradicted the evidence at trial and Hall's account of the Sunoco robbery. *Id.* at 13-16. Among these contradictions, the PCRA court noted that Moore stated that he drove the pair to and from the robbery in his red Dodge vehicle and he parked across the street in a grassy lot while Hall testified that they were picked up afterward in an alley by a get-away driver in a gold vehicle. PCRA Court Opinion, 1/15/20, at 14; *see also* N.T., 7/22/19, at 16-17, 47, 49-51. In addition, Moore testified that Hall was carrying a fire extinguisher during the robbery that went off inadvertently in the car afterward, while Hall stated that he attempted to discharge the fire extinguisher as a distraction during the robbery but discovered it was empty. PCRA Court Opinion, 1/15/20, at 13-14; *see also* N.T., 7/22/19, at 15-16, 47-48.

The court further noted Moore's testimony that the robbery occurred at night but "wasn't past midnight," while the evidence at trial, including the time-stamped surveillance footage, clearly indicated that it occurred just after 5:00 a.m. PCRA Court Opinion, 1/15/20, at 14-15; *see also* N.T., 7/22/19, at 13, 37-38. Moore testified that he was wearing the white Halloween mask with red hair during the robbery but did not mention the black ski mask that was clearly visible in the video. PCRA Court Opinion, 1/15/20, at 15; *see also* N.T., 7/22/19, at 14, 24. Moore testified that he recalled having the green jacket he wore during the incident when he went to jail in 2011, which contradicts the fact that it was discovered by police two days after the robbery. PCRA Court Opinion, 1/15/20, at 14; *see also* N.T., 7/22/19, at 13, 27, 31. The PCRA court also found it implausible that Moore was the taller individual

who participated in the robbery as the video shows a substantial height difference between the two individuals; Moore, who is 5'10" or 5'11", was only two to three inches taller than Hall, while Appellant was approximately eight inches taller than Hall. PCRA Court Opinion, 1/15/20, at 14. In addition, the court observed that Moore faced no jeopardy from his testimony as the statute of limitations had run on the robbery and he was already serving a life sentence. *Id.* at 15. Finally, the court found that Hall's testimony also lacked credibility because it conflicted with trial evidence from a wide range of sources implicating Appellant, rather than Thomas Moore, as Hall's partner in the robbery. *Id.* at 13, 15-16.

Appellant filed a timely appeal of the PCRA court's order. He argues on appeal that the after-discovered evidence he presented at the PCRA hearing undermined his conviction to the degree that the PCRA court was required to vacate his conviction and order a new trial. Appellant frames his appellate issue as follows:

> Thomas Moore's written statement and confirming testimony along with Codefendant Philip Hall's collaborative testimony on the day of his guilty plea and during the evidentiary hearing establish [Appellant] was not involved in the robbery of the Sunoco A-Plus on October 11, 2009 and require this Court to grant a new trial to permit the fact finder to consider evidence that is not merely corroborative or cumulative in nature, will not be admitted solely to impeach and which will likely result in a different verdict because said evidence is of a higher grade and of greater character than any evidence presented by either Party during [Appellant's] first trial.

Appellant's Brief at 4.

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its decision is free of legal error. **Commonwealth v. Brown**, 196 A.3d 130, 150 (Pa. 2018).

> When supported by the record, the PCRA court's credibility determinations are binding on this Court, but we apply a de novo standard of review to the PCRA court's legal conclusions. We must review the PCRA court's findings and the evidence of record in a light most favorable to the Commonwealth as the winner at the trial level.

**Id.** (internal citation omitted).

We first must address the timeliness of Appellant's petition. The PCRA provides that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). Appellant alleged that his petition fell within the newly discovered fact exception to the PCRA's one-year time bar. This exception provides that a petitioner may file a PCRA claim beyond the one-year period if the petitioner alleges and proves that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Any petition attempting to invoke this exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). "The PCRA's time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the underlying merits of a claim." **Commonwealth v. Greco**, 203 A.3d 1120, 1124 (Pa. Super. 2019).

In this case, our Supreme Court denied Appellant's petition for allowance of appeal on July 27, 2016, and therefore his judgment of sentence became final 90 days later on October 25, 2016, which was the last date upon which Appellant could have filed a petition for writ of *certiorari* with the United States Supreme Court. 42 Pa.C.S. § 9545(b)(3); **Commonwealth v. Reed**, 107 A.3d 137, 141 (Pa. Super. 2014). Appellant was thus required to file his PCRA petition by October 25, 2017. 42 Pa.C.S. § 9545(b)(1). Appellant's petition filed on March 1, 2019 was therefore untimely.

We agree, however, with the PCRA court's determination that Appellant satisfied the newly discovered fact exception to the one-year time bar. Appellant became aware of the facts upon which his petition was based – Thomas Moore's admission that he participated in the Sunoco robbery – when he received Moore's February 15, 2019 letter. Appellant filed his petition approximately two weeks later, well within the one-year period allowed under the PCRA. Moreover, Appellant could not have ascertained the new facts underlying his petition earlier with the exercise of due diligence because Moore had not previously publicly stated that he participated in the Sunoco robbery.

Because Appellant's petition satisfies the PCRA timeliness exception, we must address whether his after-discovered evidence claim warrants relief. To prevail on a PCRA claim based upon after-discovered evidence, the petitioner must show that the evidence (1) has been discovered after the trial and could not have been obtained earlier by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for

impeachment purposes; and (4) would likely result in a different verdict if a new trial were granted. ***Commonwealth v. Williams***, 215 A.3d 1019, 1024 (Pa. Super. 2019). The petitioner is required to prove each of these four elements by a preponderance of the evidence. ***Id.***

As the PCRA court comprehensively explained in its January 15, 2020 opinion, the account Thomas Moore offered of his participation in the October 11, 2009 Sunoco A-Plus robbery materially conflicts with Philip Hall's account of the robbery as well as the physical, demonstrative, and testimonial evidence at trial. The inconsistencies that the PCRA court highlighted in Moore's testimony relate not to fading memories of events ten years prior; instead, nearly all of the specific details Moore recounted of the robbery were at odds with the trial evidence and Hall's testimony. The PCRA court's findings of fact and its determination that Moore's and Hall's testimony lacked credibility find ample support in the record. The PCRA court therefore properly concluded that Appellant's after-discovered evidence was not "of such a strong nature and character that a different verdict will likely result at a retrial." ***Williams***, 215 A.3d at 1028. Accordingly, we affirm the PCRA court's denial of Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/22/2020